counsel. Good morning. May it please the court. My name is Catherine Hart and I'm representing the appellant Darwin Bush in this matter. Your honors, this case presents a very different and novel search issue. I know you know the facts, but if I can just indulge you for one moment, it was the evening of March 22, 2001. It was dark out at night. There had been negotiations and attempt by a David Morin to attempt to purchase 10 kilograms of cocaine at $14,500 per kilogram. The negotiations had taken place both the day before that afternoon, that evening. Negotiations were taking place. There was a case where there had been suspicion directed at my client, where my client had been seen, where there were any furtive movements whatsoever, whether there was any mention at all. There had been no mention at all of Mr. Bush. Officers, there were six of them. Hanging out. Excuse me, what? He was just sort of hanging out. He showed up there, but nobody had seen him before the officers, the six officers swooped in to make an arrest. Three more were doing a surveillance. My client then was seen at that moment. He had not been seen in the area before. He hadn't been seen loitering, lurking. He wasn't seen bringing a car into the area at all. So there had been nothing in advance, no advance notice that my client had been seen at that moment. So the officers swooped in to make an arrest of Mr. Morin. There are three men there. There are my client, Mr. Bush, and there is Mr. Ford and Mr. Morin. Mr. Ford hightails it out of there, runs out of there. One of the six officers that's there to make the arrest does run after Mr. Ford. My client is arrested. There's some issue about whether he was detained or arrested. My position is that my client was arrested. He was basically thrown to the ground. There was some indication that my client might have wavered one moment or so before he capitulated to the police authority, but he was taken to the Tello talks about Bush being arrested. A detective Iskanderian talks about doing arrest tags on Mr. Bush. Now, there was a car, and the car had been borrowed by Mr. Bush from his girlfriend, Lenore Ellard. The car was there, and in front of the car were the four bags. Two of the bags contained paper. One of the bags contained a .38 pistol. Another bag contained about $7,500 in cash. Judge Ishii, in ruling on the search of the rental car, which contained approximately 73.7 grams of crack cocaine that were packaged in various smaller containers and that were located in the console of the rental car, the lower court, Judge Ishii, sustained the search of the car that had been borrowed by Mr. Bush, sustained it on the theory that automobiles are, you know, inherently movable, inherently mobile. There's a lesser protection to automobiles. And Judge Ishii relied on a whole battery of automobile search cases, starting from Carroll v. U.S. Judge cited Chambers v. Moroney, California v. Carney, U.S. v. Ross, and U.S. v. Hatley. Now, those cases and their progeny and their ilk, those cases all have to do with a car where there is some direct suspicion that links a particular car with a particular individual. I mean, if you go back to those old prohibition search cases, the Carroll brothers case, and you go through Chambers v. Moroney, and you go through California v. Carney, those cases have a direct link. In California v. Carney, for example, there were teenagers that were apparently being approached to go into a trailer, a vehicle that was used as a home for marijuana in exchange for sex acts. Officers had the teenagers under surveillance and under observation, and they had an interview with one of them about getting marijuana. So they went in and did the search. And in Chambers v. Moroney, yes. Kennedy. Do you think the proximity of the four bags to the automobile is sufficient to create a cause to search? And it being the only automobile right there at that time. It was the only automobile right there. There were other automobiles on the lot, because this was a car detailing business at 1142 F Street. So, yes, there were other cars on the lot. In the location where these particular four bags were, the record says that there was not another car in that specific location, which was in an alley location. Well, when you look at the facts, there had been a drug transaction that had been aborted. The drug transaction was for Marin to take money and to purchase the kilograms of cocaine. But there wasn't any suspicion that there was going to be drugs in the area or drugs in a car, because the whole reverse sting was simply to purchase drugs. The drugs had not yet been purchased. So just the fact that there were four. Let me ask two questions about the aborted drug transaction and then the subsequent searches. What amount of time transpired between the two? Between the end of the drug transaction and the officers pouncing on the car? Do you know, there is not anything in our record that says exactly how much time it was. Even the testimony of the undercover informant. It wasn't hours. No, it was not hours. It was a matter of minutes, Your Honor. But as to whether it was two minutes or five minutes, we don't have. You've answered my question. You told me that from your reading of it, the record is unclear. Is that right? The record is unclear, but it is always. As to the time. As to the time, but my impression is. The second question is how much distance. How much what? Distance. Physical distance between the aborted drug transaction and the vehicle. The aborted drug transaction was in the alley, but there isn't testimony in this record. There may be in the actual, in the trial. So it's from the alley to the street? From the alley to the street. I don't know what the actual distance is. Half a block? Could be. In our record that is before this Court, we don't have testimony as to how many feet it was from the actual aborted drug transaction to where the location of these bags are. It was not, I mean, it might have been a distance that would be within the size of this courtroom. One of these bags contained a weapon? One of the bags contained a weapon, and Judge Ishii did not make any ruling about the weapon. We don't know whether that was an oversight or not as to whether he, the Judge Ishii in coming to his factual findings didn't specifically mention the gun as providing probable cause, but I know that we can measure probable cause by what was in the minds of the officers. So the officers apparently did find a gun that was in the bag. But does that? Was the gun visible before the bag was opened? No. The bag had to be opened and the gun was found in the bag. Whose bag was it? The bag, well, that was not determined in this motion as to whose bag it was, but it was never suggested that that was, there's never been any attempt on the part of the government to say that that was Mr. Bush's bag whatsoever. It was illegitimate. What was the government's, what is the government's justification for looking in the bag? The government's justification for looking in the bag is that that was a search incident to the arrest of Mr. Marin and incident to the arrest of Mr. Ford. The government has never maintained that they had probable cause to arrest Mr. Bush before they looked in the bags and then looked in the car. So the government's justification. Once they found the gun in the bag, which was leaning up against the car? It was not leaning up against the car. The four bags were positioned in front of the car. There's no testimony. There's no evidence. They were leaning against the car. How far away were they? Within approximate, within 10 feet. Once the weapon was found in the bag, wouldn't Michigan v. Long authorize a protective search of the interior of the vehicle? Well, in Michigan v. Long, we had a car that was driving erratically at a high rate of speed. The car swerved in the ditch. We had a defendant who was under the influence of alcohol or drugs, opened the car, opened up the car door, and then the officers followed and saw a hunting knife on the interior and saw a leather pouch containing marijuana. In Michigan v. Long, we had a driver who was actually in a vehicle driving it erratically and opens it up, and then the officers see a hunting knife. And so because there was a probable cause to believe that the individual had been violating the law, then there was a probable cause to go search the car, and because there was the hunting knife found, that led to an issue of officer safety. So I would say that Michigan v. Long is, again, follows in that long line of traditional authority in which we have a link between some wrong driving, something where somebody is speeding or there's a particularized suspicion about somebody who was operating a vehicle who may have committed a crime, and we have a nexus between the vehicle, the operator, and some sort of contraband. Now, we don't necessarily – the government made an issue in my brief about how the government officers to search a car don't necessarily have to know what exactly has to be in a car. I agree with that. But in this case, there was no specific suspicion that linked Darwin Bush with that gun. There's no other evidence than proximity. Now, I think cases – That little red light means that our questions have taken you over your allotted time. If you'd like to save some time for rebuttal, we'll give you an extra minute. Oh, of course. I barely got started. Thank you. Okay. That's quite all right. You were attempting to answer the questions. Counsel? Kevin Rooney on behalf of the United States. I was trial counsel. I'm very familiar with this case. At our brief at page 11, we talk about the factual basis somewhat, and the search was within minutes. I don't think anywhere in the records it's ever been in precisely detail, but within minutes of the aborted drug transaction, the police come onto the lot. And I think just to get a little bit of physical proximity, get a physical description of the scene might be helpful. There's a large lot. It's fenced, and the Court can think of it as a very large parking lot. In the middle of the parking lot are two buildings that sit side by side. In other words, the lot faces north, the buildings face north. In between those buildings, so there's an east-west alley, that's where these people were, roughly maybe half a block, maybe half a city block from the street to where the alley is. The alley is, say, 20 feet wide. In the back of this general large lot, it was unpaved. There were many, many cars parked. Not many, 20. In the front, paved, fewer cars. There's a car wash there. There was a bus depot that was open. There were very few cars. There's no cars within 30, 40, 50 feet of the particular car where these three individuals are found. The bags, I think, I can't cite exactly to the record. The bags were within, I would indicate, a foot or two at most, three feet from the car. It was very clear from the record. Let me address what I think is at issue in this case and what the facts are. The police had a lot of suspicion against Mr. Marin and against Mr. Ford. Counsel is generally correct that Mr. Bush wasn't involved until the officers come in after the aborted transaction and they see three men in this breezeway or alleyway. He's sort of a lucky find. He is in the wrong place at the wrong time, up to no good, frankly. They come in. They scream, police, police. Hold it. Mr. Ford. Ford runs. Mr. Ford runs. The other two, our contention has always been they're detained. They hold Mr. Bush there. Mr. Bush, there's no dispute that he didn't initially get down. He's helped down with a foot to his back. He's taken down at gunpoint. Mr. Ford runs south through the alley, over the fence, gets caught in the lot across the street. The officers check in and it's in the excerpt of record, Detective Tello's declaration, that they check these bags first. Counsel, and I've argued in the brief, doesn't have any reasonable expectation of privacy in those bags. Mr. Marin very quickly files a declaration saying the gun is his. He's trying to get his friend, Mr. Ford, out of trouble. He files a declaration saying it's my gun, my money. Ford's got nothing to do with my discussions with the informant. In one bag is a loaded .38 caliber revolver. In another bag is about $7,800 patched on top of a lot of papers and plastic so that if you open the bag, it looks like the whole bag is filled with money, which corroborates what the CI have been reporting. They're showing him a bag of money. There's a bag full of money. There's more money there. Bring the kilos of cocaine down. How much time elapses between the discovery of the pistol in the bag and the search of the vehicle? I don't think that's directly addressed in the record, but it's within, I would say, minutes, within half an hour at the very most. They look in the bags briefly. They see what's in there. They're going to search the car. The men have been detained. Then they search the car and they find the cracked cocaine in the car. And there's no dispute that it's Mr. Bush's cracked cocaine. It's his car that he's his girlfriend has rented. How was that determined? Well, Mr. Bush's fingerprint on the cracked cocaine was very helpful. There was a question how was the car was Mr. Bush's determined. How was it connected to him? He admitted on the scene that it was his. He had the keys to it in his pocket. And it was, there was some association. I say his, that he had some control over it. Yes. The officers had not seen Mr. Bush or their car arrive. They knew nothing about Mr. Bush until they were there. What I would suggest to the Court is whether it's Mr. Bush's car or not is not what's at issue here. I think what's only at issue here is did the police have the right to search that car at that time. Once they've got the right to search that car, then they, you know, then the chips fall where they may. And I think counsel's argument that there's a legal requirement that there be direct evidence pointing to a particular car or a particular person is wrong. And it would have the effect of giving more protection to a car than to a home. The, this Court's authority is very clear that once the government establishes that a drug dealer lives at a particular location, the government can search that The government's position in this case is that under the circumstances of this incident, these three men in the alley close to this only car there, close in time to the aborted drug transaction, there was reasonable cause to believe that that car was somehow involved in the drug transaction and would have, would be likely to have evidence of the drug transaction. Another gun, more money, who knows. That's what gave the government the right to search that car. I have looked. In my research, I couldn't find a case exactly on point. I cited a D.C. Circuit case where the officer saw a guy dealing crack cocaine. He had driven up in a particular car. They arrested him and they could search his car. The Court also touched on another argument that we raised in our brief that a protective search of this car for a weapon under these circumstances was certainly justified. It's dark. It's kind of a deserted area of this dark lot. There's a gun involved. Somebody else can come in and retrieve a gun that might be in the car. That's why the government had the right to search this car. What time of the night was it? It's a deferred – it's set out in my brief. It was 9 o'clock. I remember that. I don't think there's any dispute. It's in March. It's dark. The alley is not well lit. Okay. I think we understand your argument. Okay. Thank you. We'll give you that minute back for rebuttal. I think the time was a little bit earlier around between 7.30 and 8, but there's no dispute that it was March and it was dark out. The actual way this search occurred was that Mr. Bush was arrested. He was held down. He was handcuffed. He was patted down, and a key to the car was taken from his pocket. And then Detective Tello went and looked in the car and used the key to open up the car and found in the car cell phones in the console, and underneath the cell phones found what he believed to be rock cocaine. And I know these search cases are very fact specific, and Detective Tello's report is on excerpt of record page 44. And the sequence that he describes is that that search of Mr. Bush's car, if you follow his chronology, seems to take place before it's another detective who searches in the bags and finds the gun in the bag and the money in the bag. So I believe that the government has tried to bootstrap this by doing an illegal search of Mr. Bush based on an arrest without probable cause and then searching the car and then later justifying the search on the basis of the bags that were looked in by another detective. And so I would submit that there was not probable cause to arrest Bush and therefore then search the car, and that simply the proximity of the bags to the car did not create probable cause to search the car any more than an individual simply next to or hanging out with people who have committed crimes gives a right to search that particular individual. Okay. Thank you for your argument there. I'm sorry. Was there any finding by the judge after the motion to suppress on a sequence of the search? No. The judge relied exclusively, it's my understanding, on the fact that the car was next to, adjacent to the bags, and the bags contained the gun and the cash and the bags were in an area following the attempted drug transaction. The court did not justify the search on other grounds. Well, at least implicit in that, I guess, is that the bags are open before the car is searched. Well, I suppose that would be implicit in that, but I submit that the record speaks otherwise. Actually, the judge did not make a finding that that occurred before. In my reading of the judicial findings, the judge does not say that the inspection of the bags preceded the search. The court says that the inspection contents of the bags justifies the search of the car. Now, I guess apparently, I mean, the government's brief says the bags were inspected before the car was searched, and they cite the declaration of Howard Tello. Well, Tello's actual report lists, seems to list in chronological order the sequence of what occurred, and in Tello's report he does not describe inspecting the bags before he searched. But the affidavit does. But the affidavit does? I guess you're right, Your Honor. Yeah. Okay. All right. Thank both counsel for their arguments. United States v. Bush is ordered to submit it, and we'll now proceed to the related case of United States v. Marin. Do I pronounce that right? Marin. Marin. Thank you. First, I'd like to object to counsel for Mr. Bush's continued
judges: Canby, Hawkins, Duffy